**PROFESSIONAL AIR TRAFFIC CONTROLLERS ORGANIZATION, Plaintiff,**

v.

**Langhorne M. BOND, Administrator Federal Aviation Administration and United States of America, Defendants.**

**No. 79–1691.**

United States District Court, District of Columbia.

Aug. 31, 1979.

William B. Peer, Washington, D. C., for plaintiff.

Scott T. Kragie, Asst. U. S. Atty., Washington, D. C., for defendants.

## MEMORANDUM ORDER

PENN, District Judge.

This comes before the Court on the motion for preliminary injunction filed by the plaintiff and the motion to dismiss, or in the alternative, for summary judgment, filed by the defendants.

The plaintiff, Professional Air Traffic Controllers Organization (PATCO) is the duly designated and certified collective bargaining representative for air traffic controllers and certain other persons employed by the Federal Aviation Administration (FAA). It filed this action, in which it seeks a declaratory judgment, mandamus and injunctive relief, on behalf of itself and all members and employees it represents. Langhorne M. Bond, is the Administrator of the FAA.

The underlying facts are as follows: The FAA initiated the Aviation Safety Reporting Program (ASRP) in May 1975. The program was designed to increase the FAA's awareness of deficiencies and discrepancies in the national aviation system by encouraging the free and unrestricted flow of information that might be instructive in avoiding accidents or incidents before they occur. It was anticipated that the data collected by the program would provide a sound basis for improving the current aviation system, as well as establishing a better basis for design recommendations for future systems. The information to be used in the program was to be submitted voluntarily by pilots, controllers and others using and working in the aviation system. The program provided immunity to the reporter and all other persons involved in a reported incident.[1] In April 1976 the program was modified to one entitled The Aviation Safety Reporting System and was transferred to the National Aeronautics and

---

1. Thus if a controller reported an incident it meant that anyone who might have been disciplined as the result of the incident, including a pilot, would be immune from such action.

Space Administration (NASA) to guarantee the anonymity of the reporters using the system and increase the flow of information.

The July 1975 Collective Bargaining Agreement (Agreement) between PATCO and FAA provided for a waiver, for a period of two years beginning May 1, 1975, of the FAA's right to take disciplinary action against any bargaining unit employee who met all the requirements of the reporting program. That waiver was extended in the Agreement between PATCO and FAA dated March 1978 (Deft.Mo.Ex.A), which provides in Article 70 as follows:

Article 70—Immunity Program

Section 1. The Employer agrees, for a period of three years beginning from the effective date of this agreement, to waive the right to take disciplinary action against any bargaining unit employee who meets all the requirements of the aviation safety reporting program published by the Employer on April 22, 1975, as it may be clarified, modified, or expanded from time to time by the Employer at his discretion. This waiver does not extend to incidents not covered by the program, criminal offenses, gross negligence, willful misconduct, or accidents.

Section 2. The Employer acknowledges and shall comply with the Union's written request to preserve the anonymity of members of the unit who participate in the program to the extent permitted by laws and regulations.

The Agreement also contains a disputes settlement procedure in Article 7 which provides in Section 1 that:

Article 7—Disputes Settlement Procedure

Section 1. This Article provides the procedure for the timely consideration of grievances over the interpretation or application of this agreement. This procedure does not cover any other matters for which statutory appeals procedures exist and *shall be the exclusive procedure available to the Parties and the employees in the unit for resolving grievances over the interpretation or application of this agreement.* Any employee, group of employees or the Parties may file a grievance under this procedure. The Parties shall cooperate to resolve grievances informally at the earliest possible time and at the lowest possible supervisory level. (Emphasis the Court's.)

Section 4 of Article 7 outlines the method and procedure to be followed in grievances filed by PATCO including the submission of disputes to an arbitrator. Section 5 of Article 7 provides that "[t]he decision of the arbitrator is final and binding". Section 11 of Article 7 provides that "[i]n lieu of the normal procedures in the Article, the parties at the national level may, by *mutual agreement* refer a particular grievance to expedited arbitration". (Emphasis the Court's.) Under the latter procedure, there are no briefs, no official transcripts, no formal rules of evidence and the arbitrator is required to issue his decision within five days.

FAA represents that after the ASRP had been in effect for four years, it concluded that there were numerous serious incidents in which it could not discipline controllers and that the program provided only limited significant data not already known from other sources. (Failor Aff. ¶¶ 6–11.) As a result, the FAA decided to modify the criteria under which immunity would be granted. FAA notified PATCO of its intention on or about March 15, 1979, and published notice of The FAA Modifications in Aviation Safety Reporting Program (Modifications) in the Federal Register on March 26, 1979. See 44 Fed.Reg. 18128.

The Modifications refer to the ASRP and note that the confidentiality feature of the NASA Reporting System "has proven to be totally effective" and that the "waiver of disciplinary actions by FAA against persons involved in incidents reported to NASA is unnecessary so far as reporter protection is concerned". It further notes "that the immunity feature has been used by some reporters for the purpose of avoiding enforcement actions for violations" and that failure to take disciplinary action can no longer be justified when knowledge of a violation is obtained independently of any report filed

with NASA. Finally, the Modifications set forth a new procedure which protects the reporter but not others who may be involved in an incident, the reporter being protected only where he makes a timely report within ten days, but further providing that when FAA obtains information other than through NASA, that disciplinary action may even be taken against the reporter of the incident. The Modifications were to take effect on April 30, 1979.

Representatives of the parties met after the publication of the Modifications to discuss PATCO's concern over the changes and the effect they would have on the controllers. The FAA agreed to make some wording changes and agreed that parity between controllers and pilots, to the extent possible, was desirable. (Kossiaras Aff. ¶ 4.) Later, PATCO requested that the dispute be referred for expedited arbitration, however, that request was rejected by FAA. In April 1979, PATCO wrote FAA requesting formal arbitration, however, FAA did not respond and PATCO did nothing more to initiate the arbitration procedure. The parties finally initiated the arbitration procedure only after the Court asked during the last hearing whether the matter had been submitted to arbitration.

The FAA notified PATCO in a letter dated June 28, 1979, that the proposed changes had been discussed with members of the Advisory Committee[2] on NASA Aviation Safety Reporting System. They advised that the Modifications would take effect with some changes, namely, even though a violation was found, no formal disciplinary action would be taken against the controllers if *all* the following conditions were present: (1) The violation is inadvertent, (2) the violation does not involve a criminal offense or accident or actions which disclose a lack of qualification, (3) the person is not the subject of evidence concerning a violation and (4) that the person prove within ten days after the violation that a completed written report of the incident had been submitted under ASRP.

The parties originally came before the Court on a request for a temporary restraining order, however, FAA agreed not to implement the Modifications as amended until after the Court had heard and ruled on PATCO's motion for a preliminary injunction. Just prior to the hearing on the pending motion, the plaintiff filed a suggestion for interim disposition in which PATCO suggested that the parties maintain the status quo pending submission of the case to arbitration. FAA has rejected that suggestion.

I

Although PATCO originally argued that FAA had violated the Administrative Procedure Act (APA), 5 U.S.C. § 551 et seq., and the Agreement, it now concedes that the grievance procedure set forth in the Agreement should be followed. Thus, PATCO agrees that this dispute should properly be submitted to arbitration and that the Court should not undertake to interpret the Agreement. It nevertheless seeks injunctive relief to maintain the status quo pending a final decision by the Arbitrator. It expressed a concern that if not enjoined, the FAA will take disciplinary action against controllers where permitted under the Modifications as amended by the June 28, 1979, letter from FAA to PATCO.

The FAA concedes that it intends to take disciplinary action in those cases where it is warranted and permissible under the Agreement as amended by the Modifications and the June 28, 1979 letter, but argues that in the event, an arbitrator determines FAA had no authority under the Agreement to incorporate the Modifications in the Agreement, all those controllers or employees who were improperly disciplined under the Modifications would be reinstated to their former status and their "records" expunged.

The criteria for injunctive relief in this circuit is set out in *Virginia Petroleum Jobbers Assoc. v. FPC*, 104 U.S.App.D.C. 106, 259 F.2d 921 (1958). Applying that criteria to the instant case means that PATCO must

**2.** PATCO was represented on the Advisory Committee.

make a strong showing that it is likely to prevail on the merits, that without injunctive relief it will be irreparably injured, that the stay will not substantially injure others, and that the public interest would be protected. Id., U.S.App.D.C. at 110, F.2d at 925. The strict requirements set forth in *Virginia Petroleum Jobbers* have been somewhat modified by *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.*, 182 U.S.App.D.C. 220, 222–23, 559 F.2d 841, 843–44 (1977). The latter case makes clear that the injunctive relief is not to be determined based solely upon whether the movant has made out a mathematical probability of success. "The necessary 'level' or 'degree' of probability of success will vary according to the Court's assessment of the other factors". *Id.*, 182 U.S.App.D.C. at 22, 559 F.2d at 843.

The Court after applying the above guidelines to the instant case concludes that PATCO is not entitled to injunctive relief. Bypassing the question of the probability of success on the merits for the moment, the Court cannot find that PATCO or its members will suffer irreparable harm if the injunction is not granted. PATCO concedes that the dispute between the parties should be submitted to arbitration pursuant to the Agreement. If the arbitrator finds in favor of PATCO, any disciplinary action taken against its members will be set aside and they will be returned to their former status. This was the representation by FAA in open court.

The question as to whether the stay would harm other parties and where lies the public interest are best considered together in the context of this case. FAA states that it seeks to modify the ASRP because the immunity feature has been used by some controllers to avoid enforcement action for violations of Federal Aviation Regulations. In short, it has concluded that some controllers deliberately report incidents to avoid being disciplined when they may have violated a rule or regulation. FAA has also concluded that, since it has found that most such information can be obtained from or furnished by other sources, that part of the program can no longer be justified. It is only a short step from that conclusion to a suggestion that perhaps the interests of the public are best served by the modification of the ASRP.

PATCO argues that the modification of the ASRP would mean that controllers will fail to report violations thereby making less information available for consideration and planning by the FAA. It is unnecessary for the Court to consider this argument except to note that the FAA has concluded that it would receive such information from other sources and to further note that neither side disputes that the controllers are required to report incidents which may endanger the public in any event.

PATCO suggests that the FAA is acting in bad faith. It notes that FAA refused to agree to expedited arbitration however, the Agreement makes clear that expedited arbitration may be used only when the parties mutually agree. (Plf.Ex.A, Article 7, Sec. 11.) PATCO also points to the failure of the FAA to institute the arbitration procedure once PATCO had requested it. The parties disagree over which has to take the necessary steps to institute arbitration. Regardless of the action or inaction of the FAA following the receipt of the PATCO letter requesting arbitration, it is clear that PATCO itself could have taken the next step under the agreement and yet neither side did anything for over two months. PATCO appears to be as much at fault in this regard as FAA.

Finally, PATCO has failed to demonstrate that it is likely to prevail on the merits. While the Court will not attempt to interpret Article 70 of the Agreement, since that matter is to be submitted for arbitration, it does note that Section provides that the program is subject to clarification or modification by the FAA at its discretion.

Taking all of the above factors into consideration, this Court concludes that PATCO is not entitled to injunctive relief and accordingly its motion for a preliminary injunction will be denied.

## II

Before turning away from the issue as to whether PATCO is entitled to injunctive relief, the Court finds it necessary to very briefly address PATCO's "suggestions for interim disposition" and the cases cited therein.

At the hearing on the motions before the court, PATCO conceded that the Court only had authority at this time to grant injunctive relief in order to maintain the status quo pending submission of the dispute to arbitration under the terms of the Agreement. Plaintiff concedes that the Court should not concern itself with an interpretation of the Agreement or attempt to define the rights of the parties. The cases PATCO cites are in support of its request for a stay pending arbitration. The defendants oppose the request since they argue that for the Court to grant the stay is to grant the real relief now sought by PATCO.

This Court has already concluded that injunctive relief is inappropriate under the facts of this case since PATCO has failed to make a showing of irreparable harm. Part I, *supra*. Furthermore, PATCO and its members on one side and the FAA on the other side have agreed under the Collective Bargaining Agreement to a procedure for handling such disputes. The cases cited by PATCO in support of their request that the Court maintain the status quo pending arbitration, are readily distinguishable. In *Brotherhood of Locomotive Engineers v. Missouri-Kansas-Texas Railroad*, 363 U.S. 528, 80 S.Ct. 1326, 4 L.E.2d 1435 (1960), the court approved the granting of an injunction since that action preserved the jurisdiction of the Adjustment Board under the Railway Labor Act. The court also noted that: "[T]he dispute out of which the judicial controversy arose does not merely concern rates of pay or job assignments, but rather involves the discharge of employees from positions long held and the dislocation of others from their homes". Id. at 534, 80 S.Ct. at 1330. The facts in two other cases cited by PATCO, *Brotherhood of Railway, Airline Clerks v. Railway Express Agency*, 409 F.2d 312 (2d Cir. 1969), *Westchester*

*Lodge 2186 v. Railway Express Agency*, 329 F.2d 748 (2d Cir. 1964), are similar to those in the above case and those courts approved injunctive relief to maintain the jurisdiction of the Board taking into consideration as well the potential hardship to the members of the union. In *Spokane, Portland and Seattle v. Order of Railway Conductors and Brakemen*, 265 F.Supp. 892, 894 (D.DC 1967), the court enjoined the railroad from making changes in the size of train crews noting that some crewmen would be displaced and out of work and further noting that the railroad could have submitted its request to the National Railroad Adjustment Board rather than acting on its own.

As noted, the above cases are clearly distinguishable from the instant case since here, injunctive relief is not required to preserve the arbitration process agreed to by the parties *and* because PATCO is unable to demonstrate that its members will suffer irreparable injury if injunctive relief is not granted. In the cited cases, the employees faced the possibility of transfers or dislocation in circumstances under which even if they were to ultimately prevail before the Adjustment Board, would cause them to suffer permanent injury and harm.

## III

The final issue is whether this action should now be dismissed.

The parties had previously entered into a Collective Bargaining Agreement which provides that such disputes are to be submitted for arbitration. PATCO, on behalf of its members has pressed their claims with the FAA and before this Court and presumably will continue to do so when that matter is submitted to arbitration. The exclusive remedy for pursuing such claims is set forth in the Agreement signed by the parties and the Court, under such circumstances, should neither intervene nor interfere. *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965); *Haynes v. United States Pipe and Foundry Co.*, 362 F.2d 414 (5th Cir. 1966). "[W]hen a dispute arises within the scope of a collective bargaining agreement, the par-

ties are relegated to the remedies which they provided in their agreement". 362 F.2d at 417. What has been said in *Haynes* applies with equal force here. PATCO's exclusive remedy under the facts of this case is under the terms of the Agreement. This being the case, and the Court having denied injunctive relief as well, it follows that this case should be dismissed.

In view of the above, the Court shall grant defendant's motion for summary judgment and dismiss this action.

## ORDER

It is hereby

ORDERED that the plaintiff's motion for a preliminary injunction is denied, and it is further

ORDERED that the defendants motion for summary judgment is granted, and it is further

ORDERED that this case is dismissed. Enter Judgment accordingly.